**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE O'MALLEY and MEGAN REILLY, individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>     v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>                            Defendant. | Case No. 3:26-cv-1276-RFL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. 3:26-CV-1276-RFL

Plaintiffs Katie O'Malley and Megan Reilly ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Williams-Sonoma, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1.      Williams-Sonoma, Inc., a California-based company which owns and operates a chain of various online and brick-and-mortar stores, has nickel and dimed online purchasers of various furniture products on its website in violation of various state consumer protection laws.

2.      Whenever a consumer visits www.williams-sonoma.com ("Williams Sonoma"), www.westelm.com ("West Elm"), or www.potterybarn.com ("Pottery Barn") (the "Websites") and selects an item for purchase, they are not shown the total cost upfront. Instead, consumers are quoted an artificially low price, only for Defendant to sneak in a mandatory "Processing" fee (the "Fee") *after* consumers input all their shipping and credit card information.  This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

3.      By analogy, if consumers were to walk into a brick-and-mortar furniture store, saw a couch they like for $999.00, pulled the tag and took it to the checkout counter, they would expect to pay $999.00 to the store, plus sales tax to the government and whatever it cost to ship the product (if they chose to ship it themselves). If, *after* consumers swiped their credit card, they noticed in fine print on the credit card pad that they would *also* be charged an extra "Processing Fee" for the service of having the tag's barcode scanned and their payment being processed, they would reasonably be outraged. And yet this is exactly what Defendant does every day through its online furniture marketplaces.

4.      This practice is known as drip pricing. "Businesses engage in drip pricing by advertising products at artificially low headline price and then disclosing additional charges later in the buying process." *Harvey v. World Mkt., LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *1 (N.D. Cal. May 9, 2025). Drip pricing has long violated various state laws. "California banned bait and switch in consumer transactions when it passed the Consumers Legal Remedies Act (the

'CLRA') in 1970." *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1148 (N.D. Cal. 2025) (citation omitted). "A common form of bait and switch is drip pricing." *Id*.

5. That said, in recent years, given the proliferation of drip pricing on online e-commerce platforms, various states, including California and Virginia, began passing laws specifically prohibiting drip pricing. In California for example, legislators expressed concerns that "Consumers [subject to drip pricing] are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online." *Mansfield*, 802 F. Supp. 3d at 1148 (quoting California Senate Rules Committee Analysis (Sept. 11, 2023) (S.B. 478)). So effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges other than either" "[t]axes or fees imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." A few months later, Virginia likewise introduced a bill which "[p]rohibits a supplier, in connection with a consumer transaction, from advertising or displaying a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." 2024 Virginia House Bill No. 2515 Virginia 2025 Regular Session. Effective July 1, 2025, Virginia Code § 59.1-608 makes it unlawful for suppliers in consumer transactions, to "advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

6. For these reasons, Plaintiffs seek relief in this action individually and on behalf of all other purchasers for damages, reasonable attorneys' costs and fees, and injunctive relief under California Civil Code §§ 1770(a)(29)(A), 1770(a)(9) and statutory damages under Virginia Code §§ 59.1-608, 59.1-200, and 59.1-204.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, in 3250 Van Ness Avenue, San Francisco, CA 94109.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

**PARTIES**

10.      Plaintiff Katie O'Malley (née Klaus) is an individual consumer who, at all times material hereto, was a citizen and resident of San Francisco, California.

11.      Plaintiff O'Malley purchased a Hold Everything Glass Liquid Soap & Lotion Dispenser, Clear, Set of 2 (Product Number 8060942) on July 11, 2025 from Williams-Sonoma.com. She encountered a purchase flow substantially similar to the one depicted above. She was initially quoted a price of $139.80 for this item, but after clicking through various screens, and entering her credit card and personal information, Defendant subtly added a "Shipping *& Processing Fee*" of $24.00 to the checkout screen. Defendant never provided a breakdown of how much of fee went to shipping as opposed to processing on either the checkout screen or subsequent email receipt. The bundled fee was mandatory because Plaintiff could not purchase the product from Defendant's website without paying the fee.

12.      At the time Plaintiff O'Malley purchased her product, she was not aware that Defendant's practices were unlawful under California law. Plaintiff was not browsing websites in search of legal violations. Plaintiff was instead browsing because she sincerely intended to purchase products, and she in fact did purchase a product.

13.      Plaintiff Megan Reilly is an individual consumer who, at all times material hereto, was a citizen and resident of Virginia Beach, Virginia.

14.      Plaintiff Reilly purchased a Shun Combo Whetstone (Product number 4696798) and All-Clad D5 Stainless Steel Sauté Pan (Product number 9475917) on July 14, 2025 from Williams-Sonoma.com. She encountered a purchase flow substantially similar to the one depicted above. She was initially quoted a price of $93.45 for the Whetstone and $268.45 for the Pan, but after clicking through various screens, and entered her credit card and personal information, Defendant subtly added a "Shipping *& Processing Fee*" of $55.00 to the checkout screen. Defendant never provided

a breakdown of how much of fee went to shipping as opposed to processing on either the checkout screen or subsequent email receipt. The bundled fee was mandatory because Plaintiff could not purchase the product from Defendant's website without paying the fee.

15. At the time Plaintiff Reilly purchased her products, she was not aware that Defendant's practices were unlawful under either California or Virginia law. Plaintiff was not browsing websites in search of legal violations. Plaintiff was instead browsing because she sincerely intended to purchase products, and she in fact did purchase a product.

16. Defendant Williams-Sonoma, Inc. ("Defendant") is a California corporation with its principal place of business in San Francisco, California. Through its many brands, including West Elm, Williams Sonoma, and Pottery Barn, Defendant offers for purchase cookware, furniture, and other home goods throughout the United States, including in the state of California. Defendant owns and operates the universally accessible, interactive websites www.williams-sonoma.com, www.westelm.com, and www.potterybarn.com (the "Websites"), which accept orders from all the United States and deliver products to all the states, including California, as part of its regular course of business.

## FACTUAL ALLEGATIONS

### California's Honest Pricing Law

17. Effective July 1, 2024, California enacted California Civil Code § 1770(a)(29)(A), which provides that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either … [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer[]" is unlawful.

18. According to the California Attorney General's Office, "[a] business can exclude shipping charges, but not handling charges" or other incidental items bundled with shipping.[1] "Like any other mandatory fee or charge, a handling charge must be included in the advertised price."[2]

---

[1] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

[2] *Id*.

To that end, the only non-governmental charge a business can impose at a later stage of the transaction is "Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii).

19.    As Senator Bill Dodd, a co-author of SB 478, stated in describing this new law: "Californians are fed up with dishonest fees being tacked on to seemingly everything … It's an underhanded trick to boost corporate profits at the expense of those who can least afford it. Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front."[3]

20.    And according to Attorney General of California Rob Bonta, "[w]e can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace."[4]

***Virginia's Mandatory Fee and Surcharge Disclosure Law***

21.    On May 2, 2025, Virginia passed Senate Bills Nos. 1212 and 2515, which amended Virginia's Consumer Protection Act to add a new Chapter to the Act, entitled Mandatory Fees or Surcharges. Va. Code § 59.1-607 *et seq*. The amendment became effective on July 1, 2025.

22.    The law provides that "No supplier shall, in connection with a consumer transaction, advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Va. Code § 59.1-608.  The law defines "Mandatory fees or surcharges" to "includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code § 59.1-607. Excluded from this definition are "(i) taxes or fees imposed on the consumer by a government or government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity or (ii) reasonable postage or shipping fees." *Id*. "Supplier" "means a seller… that advertises, solicits, or engages in consumer transactions." Va. Code Ann. §§ 59.1-607 and 59.1-198. "Consumer transaction," in turn, "means: (1) the

---

[3] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (last visited Dec. 24, 2024).

[4] *Id*.

advertisement, sale … or offering for sale… of goods or services to be used primarily for personal, family, or household purposes." *Id*.

**Williams Sonoma's Hidden Fee**

23.    Williams Sonoma has a homepage where shoppers can browse for items.



*Figure 1*

24.    When a shopper browses through various categories of items, the advertised prices of each item is shown. For example, when browsing for baking and pastry tools, a shopper will see that the Olivewood Bench Scraper is offered for $24.95—without any fees or surcharges.



*Figure 2*

25.     After a user clicks on an item from this general page, that same advertised price is again displayed on the individual item pages.



*Figure 3*

26.     The same advertised price is again displayed when the shopper adds an item to their shopping cart.



*Figure 4*

27.     The same advertised price is once again displayed in the cart itself.



*Figure 5*

28.     It isn't until a shopper goes to checkout, and *after the shopper has entered their shipping and payment information*, that Defendant's bundled "Shipping & Processing" fee is disclosed.



*Figure 6*

29.     In other words, the total price is ***never*** disclosed before a user reaches the final step in the checkout process prior to placing an order. Thus, Defendant is "[a]dvertising, displaying, or

offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

30.    The Fee is mandatory because there is *no way* to purchase a product on the website without paying the Fee. For many items, "Ship to Home" is the only option a consumer can select. And even for items which offer a "Ship to Store" option, Defendant will *still* charge a consumer a "Shipping & Processing" fee, even though the consumer will go the store to pick up the item.



*Figure 7*

31.    The "Shipping & Processing" fee is not a "[t]ax[] or other fee[] imposed by the government on the transaction."  California Civil Code § 1770(a)(29)(A)(i).

32.    The Processing portion of the "Shipping & Processing" fee is not a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical goods to the consumer." California Civil Code § 1770(a)(29)(A)(ii). Although bundled with a legitimate Shipping fee, the Processing fee is not part of the postage or carriage charge. Discovery will reveal

what percentage of the bundled "Shipping & Processing" fee is due to the processing fee. A processing fee is like a handling fee, which "[l]ike any other mandatory fee or charge … must be included in the advertised price."[5]

***West Elm's Hidden Fee***

33.    West Elm's website—also owned and operated by Defendant—also allows users to browse items. For example, if a shopper is looking for end tables, they may view this page.



*Figure 8*

///

///

///

///

///

///

///

///

///

///

---

[5] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

34.  If a shopper selects a particular item from this general page, they are taken to an individual product page. On that product page, if the consumer selects to purchase an "individual" product, the advertised price of $449 is displayed—without all mandatory fees or surcharges.



*Figure 9*

35.  The advertised price is again displayed when a shopper adds the item to their cart.



*Figure 10*

36.     The advertised price is again displayed when a shopper goes to their cart.



*Figure 11*

37.     It isn't until a shopper goes to checkout, and *after the shopper has entered their shipping and payment information*, that Defendant's bundled "Shipping & Processing" fee is disclosed.



*Figure 12*

38.     In other words, the total price is ***never*** disclosed before a user reaches the final step in the checkout process prior to placing an order. Thus, Defendant is "[a]dvertising, displaying, or

offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

39. The Fee is mandatory because there is *no way* to purchase a product on the website without paying the Fee. For many items, "Ship to Home" is the only option. *See* Figure 10. And even for others where a pick up in store option is available, Defendant still charges a "Shipping & Processing Fee." *See* Figures 3 and 7.

40. The Fee is not a "[t]ax[] or other fee[] imposed by the government on the transaction." California Civil Code § 1770(a)(29)(A)(i).

41. The Fee is not a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical goods to the consumer." California Civil Code § 1770(a)(29)(A)(i). Although bundled with a legitimate Shipping fee, the Processing fee is not part of the postage or carriage charge. Discovery will reveal what percentage of the bundled "Shipping & Processing" fee is due to the processing fee. A processing fee is like a handling fee, which "[l]ike any other mandatory fee or charge … must be included in the advertised price."[6]

***Pottery Barn's Hidden Fee***

42. Pottery Barn's website—also owned and operated by Defendant—also allows users to browse items. For example, if a shopper is looking for baskets, they may view this page.



***Figure 13***

---

[6] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

43.    If a shopper views the individual product page for the Tava Handwoven Lidded Baskets and selects the smallest size, the advertised price of $169 is displayed.



*Figure 14*

44.    The advertised price is again displayed when a shopper adds the item to their cart.



*Figure 15*

///

///

///

///

///

///

///

///

45.     The advertised price is again displayed when a shopper goes to their cart.



*Figure 16*

46.     It isn't until a shopper goes to checkout, and *after the shopper has entered their shipping and payment information*, that Defendant's bundled "Shipping & Processing" fee is disclosed. *See* Figure 17 (next page).



*Figure 17*

47.     In other words, the total price is *never* disclosed before a user reaches the final step in the checkout process prior to placing an order. Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

48.     The Fee is mandatory because there is *no way* to purchase a product on the website without paying the Fee. For many items, "Ship to Home" is the only option. *See* Figure 15. And even for others where a pick up in store option is available, Defendant still charges a "Shipping & Processing Fee." *See* Figures 3 and 7.

49.     The Fee is not a "[t]ax[] or other fee[] imposed by the government on the transaction."  California Civil Code § 1770(a)(29)(A)(i).

50.     The Fee is not a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical goods to the consumer." California Civil Code § 1770(a)(29)(A)(i). Although bundled with a legitimate Shipping fee, the Processing fee is not part of the postage or carriage charge. Discovery will reveal what percentage of the bundled "Shipping & Processing" fee is due to the processing fee. A processing fee is like a handling fee, which "[l]ike any other mandatory fee or charge … must be included in the advertised price."[7]

**CLASS ALLEGATIONS**

51.     **Nationwide Class**: Plaintiffs O'Malley and Reilly seek to represent a class defined as all individuals in the United States who purchased items using Defendant's websites on or after February 11, 2023 and paid a "Shipping & Processing" fee (the "Nationwide Class"). Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

52.     **California Class**: Plaintiff O'Malley seeks to represent a class defined as all individuals in California who purchased items using Defendant's websites on or after February 11, 2023 and paid a "Shipping & Processing" fee (the "California Class"). Excluded from the

---

[7] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

California Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

53.     **Nationwide Honest Pricing Law Subclass**: Plaintiffs O'Malley and Reilly also seek to represent a subclass defined as all individuals in the United States who purchased items using Defendant's website on or after July 1, 2024 and paid a "Shipping & Processing" fee (the "Nationwide Subclass"). Excluded from the Nationwide Honest Pricing Law Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

54.     **California Honest Pricing Law Subclass**: Plaintiff O'Malley also seeks to represent a subclass defined as all individuals in California who purchased items using Defendant's website on or after July 1, 2024 and paid a "Shipping & Processing" fee (the "California Subclass"). Excluded from the California Honest Pricing Law Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

55.     **Virginia Class:** Plaintiff Reilly seeks to represent a class defined as all individuals in Virginia who purchased items using Defendant's websites on or after February 11, 2024 and paid a "Shipping & Processing" fee (the "Virginia Class"). Excluded from the Virginia Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

56.     **Virginia Mandatory Fee and Surcharge Disclosure Subclass:** Plaintiff Reilly seeks to represent a class defined as all individuals in Virginia who purchased items using Defendant's websites on or after July 1, 2025 and paid a "Shipping & Processing" fee (the "Virginia Subclass"). Excluded from the Virginia Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

57.     Members of the Classes are so numerous that their individual joinder herein is impracticable. Members of the Classes likely number in the thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

58.     Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members. Common legal and factual

questions include, but are not limited to, whether Defendant failed to include all mandatory fees or charges when advertising, displaying, or offering a price for the items for purchase, in violation of California Civil Code § 1770(a)(29)(A), and whether Defendant advertised goods or services with intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9). The claims of the named Plaintiffs are typical of the claims of the Classes in that the named Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to include all mandatory fees or charges in the advertising, displaying, or offering a price for the items, throughout the online item purchase process.

59.     Plaintiff O'Malley is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

60.     Plaintiff Reilly is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

61.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### California Civil Code § 1770(a)(29)(A)
### (On Behalf of the Nationwide and California Subclasses)

62. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Subclass against Defendant. Plaintiff O'Malley separately brings this claim individually and on behalf of the members of the California Subclass against Defendant.

64. Defendant owns, operates, or controls the Williams Sonoma, West Elm, and Pottery Barn Websites, which are all places where consumers can purchase various items for personal and household use.

65. Defendant violated California Civil Code § 1770(a)(29)(A) by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" on the product screens depicted in this complaint.

66. Defendant's "Shipping & Processing" fee is a "mandatory fee[] or charge[]" that must be paid in order to purchase the item. Cal. Civ. Code§ 1770(a)(29)(A). What is more, for in-store pick up transactions, Defendant's Shipping fee is not a "[p]ostage or carriage charge[] that will be *reasonably* and actually incurred to ship the *physical good to the consumer*." Cal. Civ. Code § 1770(a)(29)(A)(ii) (emphasis added). For starters, if a consumer selects the in-store pick-up option, the physical good is not being shipped "to the consumer," but *to Defendant's store*. A consumer still needs to get into a car, pick up the item, and take it back to his or her home. Nor is Defendant's shipping fee for in-store pick-ups "reasonable." After all, reasonable consumers that purchase items in stores almost never pay a shipping fee, even though virtually every item in the store's inventory was necessarily manufactured elsewhere and shipped to the store before being offered for sale. Moreover, it is unclear whether an item that is being selected for pick up at one of Defendant's brick-and-mortar stores needed to be shipped to the store prior to the consumer choosing to buy it, or whether it was already in stock at that physical location when the consumer

placed her order.

67.  Plaintiffs and Subclass members were harmed because they paid Defendant's unlawful Processing fee. Because the total cost was not disclosed to Plaintiffs and Subclass members at the beginning of the purchase process, the resulting Processing fee that was applied was unlawful pursuant to California Civil Code § 1770(a)(29)(A).

68.  Plaintiffs and Subclass Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff and Subclass Members could not shop around for items at other retailers like Wayfair or Crate & Barrel, to name a few. As such, Plaintiffs and Subclass Members had no way of knowing whether they were getting the best deal that their money could buy. By hiding its Processing Fee, Defendant was able to reduce price competition and cause consumers like Plaintiffs and Subclass members to overpay.

69.  Plaintiffs and Subclass members relied on Defendant's false and misleading representations that the cost of its products did not include the Processing Fee in choosing to purchase its products.

70.  On February 13, 2026, Defendant received a letter via certified mail notifying it that it violated Cal. Civ. Code §§ 1750, *et. seq.*, specifically including subsections 1770(a)(9) and (a)(29)(A).  The notice letter was sent on behalf of Plaintiff and all other similarly situated persons. The letter provided notice that Defendant's pricing practices are deceptive acts in violation of the CLRA.  Specifically, the letter provided notice that in violation of California Civil Code § 1770(a)(29)(A), Defendant "[a]dvertis[es], display[s], or offer[s] a price for a good or service that does not include all mandatory fees or charges other than either … [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer."  The letter also provided notice that in violation of California Civil Code § 1770(a)(9), Defendant "[a]dvertis[es] goods … with intent not to sell them as advertised[.]"  The letter demanded that Defendant provide prompt relief. As of the date of this First Amended Complaint, Defendant has been given ample opportunity to

investigate and settle claims on behalf of Plaintiff and the putative class members yet failed to take any remedial action.

71. On behalf of themselves and members of the Nationwide and California Subclasses, Plaintiffs seek to enjoin the unlawful acts and practices described herein, damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

**COUNT II**
**California Civil Code § 1770(a)(9)**
**(On Behalf of the Nationwide and California Classes)**

72. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

73. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant. Plaintiff O'Malley separately brings this claim individually and on behalf of the members of the California Subclass against Defendant.

74. Defendant violated California Civil Code § 1770(a)(9) by "[a]dvertising goods … with intent not to sell them as advertised." Specifically, Defendant advertised and expressly represented the price of their products with intent not to sell them at the advertised price.

75. Plaintiffs and Class Members were harmed because they paid Defendant's unlawful Processing fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

76. Plaintiffs and Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiffs and Class Members could not shop around for items at other retailers like Wayfair or Crate & Barrel, to name a few. As such, Plaintiffs and Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Processing Fee, Defendant was able to reduce price competition and cause consumers like Plaintiffs and Class members to overpay.

77. Plaintiffs and Class members relied on Defendant's false and misleading representations of the advertised cost of its products in choosing to purchase its products.

78. As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the

items on its Website which are false due to the uniform imposition of the Fee described herein. Indeed, Defendant concealed the true price of the items, and the true nature of the Fee it was charging on each purchase, from Plaintiffs and Class members.

79. No reasonable consumer would expect the price advertised by Defendant to include an unlawful Fee in addition to lawful sales tax and shipping costs. *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 845-46 (E.D. Cal. 2024) ("Plaintiffs have sufficiently alleged [Defendant] advertises one price for its products while also surreptitiously charging a higher price by adding the Service Fee. Thus, Plaintiffs have sufficiently alleged [Defendant] advertises their goods with the intent not to sell them as advertised.").

80. Defendant does not provide services that would lead reasonable consumers to expect the imposition of the Processing Fee, and Defendant does not disclose the Processing Fee anywhere before customers reach the screen depicted in Figures 6, 11, and 16 of this complaint. Further, reasonable consumers would likewise not expect to be charged a separate Shipping Fee if they selected the in-store pick-up option. After all, reasonable consumers that purchase items in stores almost never pay a shipping fee, even though virtually every item in the store's inventory was necessarily manufactured elsewhere and shipped to the store before being offered for sale.

81. Defendant willfully employed a scheme designed to advertise a price that is not the true cost of its products, and did so willfully, wantonly, and with reckless disregard for the truth.

82. On behalf of themselves and members of the Nationwide and California Classes, Plaintiffs seek to enjoin the unlawful acts and practices described herein, damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

## COUNT III
### Virginia Code § 59.1-608
### (On Behalf of the Virginia Subclass)

83. Plaintiff Reilly repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

84. Plaintiff Reilly brings this claim individually and on behalf of the members of the Virginia Subclass against Defendant.

85.     Defendant violated Virginia Code § 59.1-608 by "advertis[ing] or display[ing] a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Specifically, on various screens prior to the checkout, Defendant advertised and displayed the price of their products without including its Processing fee—which was mandatory on all transactions. What is more, for in-store pick up transactions, Defendant's Shipping fee was likewise a "mandatory fee[] or surcharge" the term is defined under Virginia Code § 59.1-607. The shipping fee Defendant levies on products to be picked up in its physical stores is not a "*reasonable* postage or shipping fee." *Id*. (emphasis added). As noted, reasonable consumers that purchase items in stores almost never pay a shipping fee, even though virtually every item in the store's inventory was necessarily manufactured elsewhere and shipped to the store before being offered for sale.

86.     Plaintiff Reilly and Virginia Subclass Members were harmed because they paid Defendant an unlawful Processing fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

87.     Plaintiff Reilly and Virginia Subclass Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff Reilly and Virginia Subclass Members could not shop around for items at other retailers like Wayfair or Crate & Barrel, to name a few. As such, Plaintiff Reilly and Virginia Subclass Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Processing Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff Reilly and Virginia Subclass members to overpay.

88.     Because Defendant violated Virginia's Mandatory Fees or Surcharges Disclosures Act, it committed "a prohibited practice under the provisions of § 59.1-200 and shall be subject to any and all of the enforcement provisions of the Virginia Consumer Protection Act." Va. Code §59.1-610.

89.     On behalf of herself and members of the Virginia Subclass, Plaintiff Reilly seeks to obtain statutory damages and reasonable attorneys' fees and costs. *See* Va. Code §59.1-204.

## COUNT IV
### Virginia Code § 59.1-200
### (On Behalf of the Virginia Class)

90.     Plaintiff Reilly repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff Reilly brings this claim individually and on behalf of the members of the Virginia Class against Defendant.

92.     Defendant violated Virginia Code § 59.1-200(8), which prohibits companies like Defendant from "Advertising goods or services… with intent not to sell at the price or upon the terms advertised." Here, Defendant advertised its products for purchase on a website with prices that excluded its "Shipping & Processing" fee even though it knew perfectly well that regardless of whether they selected the Ship To Home or Ship To Store option, they would charge them that fee anyway.

93.     Plaintiff Reilly and Virginia Class Members were harmed because they paid Defendant an unlawful Shipping & Processing fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

94.     Plaintiff Reilly and Virginia Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff Reilly and Virginia Class Members could not shop around for items at other retailers like Wayfair or Crate & Barrel, to name a few. As such, Plaintiff Reilly and Virginia Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Processing Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff Reilly and Virginia Class members to overpay.

95.     On behalf of herself and members of the Virginia Subclass, Plaintiff Reilly seeks to obtain statutory damages and reasonable attorneys' fees and costs. *See* Va. Code §59.1-204.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Classes, prays for judgment as follows:

A.    For an order certifying the Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Classes and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Classes and Subclasses;

B.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff and the Classes and Subclasses on all counts asserted herein;

D.    For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  March 16, 2026                    **BURSOR & FISHER, P.A**.

By:    /s/ *Stefan Bogdanovich*
                Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiffs*