**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE O'MALLEY and MEGAN REILLY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>    Defendant. | Case No. 3:26-cv-1276-RFL<br><br>**OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date:   June 30, 2026<br>Time:   10:00 a.m.<br>Place:  Videoconference Only<br><br>[Hon. Rita F. Lin] |

## **TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT .............................................................................................................2

    A.    WSI's Terms of Use Are Unconscionable .....................................................2

        1.    WSI's "Infinite" Website Terms Are Substantively Unconscionable ......................................................................................2

        2.    WSI's Batched Arbitration Rules Cause Delay And Are Unconscionable ......................................................................................5

        3.    The Lack Of Notice To WSI's Terms And Any Unilateral Modifications To Them Is Procedurally Unconscionable Under *Heckman*. ....................................................................................7

    B.    WSI Fails To Establish A Contract Was Formed.......................................10

        1.    WSI's Screens Failed To Provide Reasonably Conspicuous Notice ....................................................................................................11

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Financial, LLC,*
  30 F.4th 849 (9th Cir. 2022) ........................................................................................... passim

*Bretto v. AMC Ent. Holdings, Inc.,*
  748 F. Supp. 3d 1036 (D. Kan. 2024) ........................................................................................ 15

*Chabolla v. ClassPass Inc.,*
  129 F.4th 1147 (9th Cir. 2025) ........................................................................................ 8, 12, 14

*Cody v. Jill Acquisition LLC,*
  802 F. Supp. 3d 1261 (S.D. Cal. 2025) ..................................................................................... 14

*Cook v. Univ. of Southern Cal.,*
  102 Cal. App. 5th 312 (2024) ........................................................................................... passim

*Cruz v. Tapestry, Inc.,*
  113 Cal. App. 5th 943 (2025) ........................................................................................... passim

*Fuentes v. Empire Nissan, Inc.,*
  19 Cal. 5th 93 (2026) ............................................................................................... 2, 3, 7, 9

*Gill v. Chipotle Mexican Grill, Inc.,*
  2025 WL 287320 ......................................................................................................... 15

*Godun v. JustAnswer LLC,*
  135 F.4th 699 (9th Cir. 2025) ............................................................................................ 11, 12

*Heckman v. Live Nation Ent., Inc.,*
  120 F.4th 670 (9th Cir. 2024) ........................................................................................ 2, 5, 9, 10

*Hernandez v. Event Ticket Ctr., Inc.,*
  2026 WL 618252 (E.D. Cal. Mar. 5, 2026) ................................................................................ 14

*Higgins v. Superior Ct.,*
  140 Cal. App. 4th 1238 (2006) ............................................................................................. 9

*Houtchens v. Google LLC,*
  649 F.Supp.3d 933 (N.D. Cal. 2023) ........................................................................................ 8

*Jackson v. Amazon.com, Inc.,*
  65 F.4th 1093 (9th Cir. 2023) ............................................................................................. 15

*Long v. Provide Com., Inc.,*
  245 Cal. App. 4th 855 (2016) ............................................................................................. 12

*Marshall v. Georgetown Mem'l Hosp.*,
  112 F.4th 211 (4th Cir. 2024)................................................................................................ 8, 15

*Masry v. Lowe's Companies, Inc.*,
  2024 WL 3228086 (N.D. Cal. June 28, 2024)............................................................................ 9

*Nail v. Lens.com, Inc.*,
  2024 WL 3723912 (C.D. Cal. June 20, 2024)........................................................................... 14

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ..................................................................................................... 8

*Niedziela v. Viator, Inc.*,
  2025 WL 2732916 (C.D. Cal. Sept. 25, 2025).......................................................................... 14

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ................................................................................................... 10

*OTO, L.L.C. v. Kho*,
  8 Cal. 5th 111 (2019)................................................................................................................ 8

*Pandolfi v. AviaGames, Inc.*,
  2024 WL 4051754 (N.D. Cal. Sept. 4, 2024)............................................................................. 7

*Pandolfi v. Aviagames, Inc.*,
  2025 WL 2463742 (9th Cir. Aug. 27, 2025) .............................................................................. 6

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024).................................................................................................... 14

*Plata v. Lands' End, Inc.*,
  2025 WL 2408818 (9th Cir. Aug. 20, 2025) ............................................................................ 12

*Plata v. Lands' End, Inc.*,
  2024 WL 5339858 (C.D. Cal. Dec. 19, 2024)........................................................................... 14

*R.C. v. Walmart Inc.*,
  2025 WL 2836648 (C.D. Cal. Sept. 30, 2025) ...................................................................... 9, 14

*Rios v. HRB Digital LLC*,
  807 F. Supp. 3d 975 (N.D. Cal. 2025)............................................................................... 2, 6, 7

*Rocha v. Urb. Outfitters, Inc.*,
  2024 WL 393486 (N.D. Cal. Feb. 1, 2024).............................................................................. 14

*Rodriguez v. Abercrombie & Fitch Trading Co.*,
  2026 WL 892830 (S.D. Cal. Mar. 30, 2026)............................................................................ 14

*Rushing v. Williams-Sonoma, Inc.*,
  2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ...................................................................... 1, 13

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .............................................................................. 3

*Schlueter-Beckner v. SimpliSafe, Inc.*,
2025 WL 2162948 (N.D. Cal. July 30, 2025) ............................................................................ 14

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ................................................................................................... 9, 11

*Slaten v. Dick's Sporting Goods, Inc.*,
2024 WL 1136399 (C.D. Cal. Feb. 2, 2024) .............................................................................. 14

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) .................................................................................................... 12

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ......................................................................................... 1, 11, 15

*Swain v. LaserAway Med. Grp., Inc.*,
57 Cal. App. 5th 59 (2020)........................................................................................................ 9

*Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*,
167 N.Y.S.3d 66 (2022) ............................................................................................................ 6

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024)..................................................................................................... 6

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024)............................................................................................. 8, 12

**STATUTES**

Cal. Civ. Code § 1770(a)(29)(ii) ................................................................................................. 1

## I.    INTRODUCTION

On its various e-commerce sites, Williams-Sonoma, Inc. ("WSI") advertises household products at artificially low prices, without disclosing the sizeable *processing* fees it ends up charging shoppers, in violation of state law prohibitions on drip pricing. First Amended Complaint ("FAC"), ¶ 2. To mask the true size of these *processing* fees, WSI bundles them with legitimate shipping fees. *Id*. ¶ 11. The combined amount greatly *exceed*s the costs "reasonably and actually incurred to ship the[se] [small household items] to the consumer." Cal. Civ. Code § 1770(a)(29)(ii). For example, to have a *sauté pan and knife sharpener* sent to her home, Plaintiff Reilly was charged shipping *and processing* fees of **$55.00**. FAC at ¶ 14; *see also id.* at ¶ 11 (fees for *liquid soap dispensers* was **$24.00**). And there is no way to avoid paying these fees, as WSI charges them regardless of whether consumers select the "Ship to Home or "Ship to Store," option. *Id*. ¶ 30.

Seeking to evade judicial scrutiny of these claims, WSI filed a motion to compel arbitration which another court in this district already denied. *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394 (N.D. Cal. Aug. 18, 2025). Reviewing the very same screens WSI relies on today, Judge Orrick held that WSI failed to give reasonably conspicuous notice because its terms were too small and the screens on which they were placed were too cluttered. Rather than substantively engage with *Rushing* or its reasoning, WSI's brief almost entirely ignores it. And Silver Key Rewards registration pages WSI submits provide the worst notice of all. Because the hyperlinks terms appear at the *bottom* of a long page that requires scrolling, below the "Submit" button users need to click, users can register *without having ever seen the terms*. Since the earliest days of the internet, courts have refused to enforce terms, where, as here, Plaintiffs "could not have learned of the existence of those terms unless, prior to [registering], they had scrolled down the webpage … below the [relevant assent] button." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 20 (2d Cir. 2002) (Sotomayor, J.) (applying California law). As WSI notes, "people generally read top to bottom." ECF No. 22 at 15.

Yet regardless of which screen Plaintiffs saw, there is another independent and arguably more compelling reason to deny WSI's motion: its Terms are grossly unconscionable. The Terms contain an "infinite" arbitration clause that is unbounded in scope, unlimited in duration, and lacks mutuality—the very same features that the California Court of Appeal held displayed a "high

degree of substantive unconscionability." *Cook v. Univ. of Southern Cal.*, 102 Cal. App. 5th 312, 321 (2024). The arbitration clause applies retroactively, permits WSI to make unilateral modifications without giving Plaintiffs real notice, and contains various mass arbitration batching protocols. These, too, are the very same contractual provisions the Ninth Circuit recently held "evince[d] an extreme amount of procedural unconscionability far above and beyond a run-of-the-mill contract-of-adhesion case." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024). Worse still, the WSI Terms contain a "mass arbitration" protocol forcing claims to be heard in staggered batches of 20 to 100—meaning that if thousands of consumers all file arbitration claims together—it will take years, if not decades, for many consumers just to have an opportunity to be heard. *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 989 (N.D. Cal. 2025).

For these reasons, WSI's motion to compel arbitration should again be denied.

## II.    ARGUMENT

### A.    WSI's Terms of Use Are Unconscionable

Under California law, which the parties agree applies, *see* ECF No. 22 at 6, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 102–03 (2026). These are known as the "procedural and substantive elements," of unconscionability. *Id*. at 103. WSI's "infinite" terms are both highly substantively unconscionable under *Cook* and *Rios*, and highly procedurally unconscionable under *Heckman*.

#### 1.    WSI's "Infinite" Website Terms Are Substantively Unconscionable

In recent years, the emergence of "infinite" arbitration clauses consumers purportedly agree to online through deceptive "wrap" mechanisms have sparked national concern. In the summer of 2024, a New York woman's wrongful death lawsuit became a national news story because of Disney's aggressive enforcement of its online terms of use. [1] The woman died of an allergic reaction to food she was served at a Florida restaurant inside the Disney World theme park. [2]

---

[1] NEW YORK POST *Disney Wrongful Death lawsuit Is Terms and Conditions Warning for Consumers – How Can You Protect Yourself?* (Aug. 16, 2024), *available* https://nypost.com/2024/08/16/us-news/disney-wrongful-death-lawsuit-is-terms-and-conditions-warning-for-consumers/.
[2] *Id*.

Disney, however, argued her widow's case could not be heard in court because years, prior, *while signing up for a Disney+ video streaming service membership, she agreed to the Disney+ terms of use.* [3] Those terms said that "[y]ou and Disney Interactive agree to arbitrate all disputes between you and The Walt Disney Company or its affiliates." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *2 (N.D. Cal. July 31, 2023). Legal commentators told CNN that Disney's move was "not unheard of" and used by many other companies like "AirBNB and Walmart."[4] They noted that with such "infinite arbitration clauses," "consumers may be unknowingly signing away their rights to sue companies – such as online retail platforms… *even if the claims have no relation to the service a person signed up for*."[5]

That same year, the California Court of Appeal held that such "infinite" arbitration clauses were unconscionable and would not be enforced, *even if a particular plaintiff's claim arose out of the original context of the arbitration clause. Cook*, 102 Cal. App. 5th 312. In *Cook*, the court held an arbitration agreement electronically signed as a condition of employment was unconscionable because of "(1) the broad scope of the agreement, (2) the infinite duration, and (3) the lack of mutuality in the claims that were covered." *Id*. at 321. Because of the "high degree of substantive unconscionability" created by these terms, the Court did not even address the procedural unconscionability (aside from noting it was an adhesive contract). *Id*.

The WSI Terms here bear all the same three hallmarks of substantive unconscionability as *Cook*, along with several others. *See* §§ II. B-D, *infra*. In *Cook,* "the agreement requires the arbitration of 'all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities.'" 102 Cal. App. 5th at 321. "The plain language of the agreement requires Cook to arbitrate claims that are unrelated to her employment with USC." *Id*. WSI's terms are the same:

---

[3] *Id*.

[4] CNN, *Disney's Not Alone in Saying Your Click Means You Can't Sue* (Aug. 16, 2024) *available* https://www.cnn.com/2024/08/16/politics/arbitration-signing-away-rights-disney-plus-wrongful-death-lawsuit/index.html.

[5] *Id*. (emphasis added).

**Arbitration Agreement & Waiver of Certain Rights**

You and Williams-Sonoma, Inc. agree that, except as set forth below, we will resolve any controversies, claims, counterclaims, or other disputes between you and Williams-Sonoma, Inc. or you and a third-party agent of Williams-Sonoma, Inc. (a "Claim") through final and binding arbitration instead of through court proceedings, in accordance with the Consumer Arbitration Rules of the American Arbitration Association ("AAA Rules"). This arbitration agreement applies to any existing or future Claims that you have not individually filed in a court of law or in arbitration prior to the date you agreed to these Terms. The AAA Rules are available at www.adr.org or by calling 1-800-778-7879. You and we hereby waive any right to a jury trial of any Claim. The arbitration will be heard and determined by a single arbitrator. The

Smit Decl., Ex. C at p.7 (ECF No. 22-3 at 9) (highlighting added).

Like the terms in *Cook*, here, the arbitration clause applies to "any controversies, claims, counterclaims, other disputes." *See id.* By its plain terms, it would likewise apply to actions unrelated to Plaintiffs' retail purchases—like personal injury actions in a WSI parking lot. Further, just like in *Cook*, the agreement never ends. In Cook, the "agreement expressly states that it 'shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University.'" 102 Cal. App. 5th at 325. So too here, WSI's terms say:

can adjudicate the party's claim or prayer for "public injunctive relief." In doing so, the federal or state court is bound under principles of claim or issue preclusion by the decision of the arbitrator. This Arbitration Agreement & Waiver of Certain Rights Section of the Terms and Conditions will survive the termination of your relationship with Williams-Sonoma, Inc.

Smit Decl., Ex. C at p. 8 (ECF No. 22-3 at 10) (highlighting added).

In other words, just like the arbitration agreement in *Cook*, this is an "an express term of [infinite] duration" as it "specifically provides that it will survive." 102 Cal. App. 5th at 326. Indeed, WSI's terms expressly states the "arbitration agreement applies to *any … future Claims that you have*." Smit Decl., Ex. C at p. 7 (ECF No. 22-3 at 7) (emphasis added). Worse still, the clause here is even *broader* than *Cook* because it also applies *retroactively* to "any existing… Claims that you have… *prior to the date you agreed to these Terms*." *Id*. (emphasis added).

Finally, just like the terms in *Cook*, the arbitration clause here lacks mutuality because it requires Plaintiffs to arbitrate any claims against any "third-party agent of Williams-Sonoma," but that same third-party would be perfectly free to sue Plaintiffs in court. So too, in *Cook*, the court found USC's arbitration lacked mutuality where the "agreement requires Cook to arbitrate any and all claims she may have against USC 'or any of its related entities'" but does not require USC's 'related entities' to arbitrate their claims against Cook." 102 Cal.App.5th at 326.

OPPOSITION TO MOTION TO COMPEL ARBITRATION                                          4
CASE NO. 3:26-CV-1276-RFL

*Cook* held that the presence of all three of these "unconscionable provisions in the agreement" meant "it was permeated with unconscionability" and that "curing the unconscionable provisions would require substantive rewriting of the arbitration agreement to contradict its plain language." *Id*. at 329-330. As such, the *Cook* court refused to sever the agreement. *Id*. at 330.

It is worth pausing for a moment just to consider the breathtaking scope and fundamentally unfair nature of WSI's arbitration clause. If Plaintiff O'Malley ended her relationship with WSI altogether, and ten years from now, got into a motor vehicle accident on a freeway with a truck that happened to be shipping items to a WSI store, she would be bound to arbitrate her future personal injury claims from that accident. The trucking company, on the other hand, could sue her in court without limitation. "The plain language of the arbitration agreement thus provides a significant benefit to [WSI's] related entities without any reciprocal benefit to [Plaintiff]." *Cook*, 102 Cal.App.5th at 328. Alternatively, if a WSI factory had leaked toxic contaminants into the drinking water a decade before Plaintiff Reilly agreed to WSI's Terms, and later developed a disease, she too, would be bound to arbitrate those *retroactive* claims as well.

WSI might try to argue that the "broad scope of the arbitration agreement is of no consequence," because Plaintiffs' drip pricing claims here arise out of their purchases of WSI products. *Cook*, 102 Cal.App.5th at 322 at n.2. Not so. *Cook* explains that "[u]nconscionability is judged 'at the time [the contract is] made.'" *Id*. And at the time Plaintiffs here purportedly agreed to arbitration with WSI, these offending terms were all present.

### 2.    WSI's Batched Arbitration Rules Cause Delay And Are Unconscionable

"In recent years, … plaintiff-side attorneys have had some success in bringing large numbers of parallel individual small-stakes consumer claims in arbitration." *Heckman*, 120 F.4th at 677. To prevent large numbers of consumers from vindicating their rights, WSI created a batched "mass arbitration" protocol designed to unreasonably delay proceedings. Smit Decl., Ex. C, at pp. 8-9. The terms state that if more than 25 consumers like Plaintiffs bring arbitrations against it, the parties undergo a "batching process," where 20 cases are heard during the first batch, then another 40 cases are heard for the second batch, and then 100 cases are heard at a time for each and every subsequent batch. *See id.* at pp. 8-9. "**The remaining claims shall not be filed or deemed filed in**

**arbitration … until they are selected to proceed … as part of the staged process described herein**." *Id*. at p. 8 (emphasis added). This means that if 5,000 consumers attempted to bring claims against WSI—a realistic scenario for a defendant of this size[6]—assuming each batch of 100 cases is resolved within a year—itself an optimistic assumption—the last claimant would not have her case heard for nearly *fifty years*. Indeed, WSI's terms expressly concedes that its protocol's design ensures "that the resolution of [an individual's] claim might be delayed." *See id*.

In *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 989-92 (N.D. Cal. 2025), Judge Chen held that a similar batched arbitration scheme was substantively unconscionable. This "mandated process for resolving mass arbitrations is almost certain to impose unreasonable delays." *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 989 (N.D. Cal. 2025). "The process operates in sequential rounds, such that no new tranche of arbitration claims may be filed until *every* case in the prior round has been completed. As a result, the slowest case in a given round sets the pace for all others, and any delay in one arbitration halts progress for all remaining claimants and would-be claimants who are barred from filing until their turn arrives." *Id*. at 990 (emphasis added).

Worse still, nothing in WSI's terms "provides recourse, oversight, or other accountability procedures in the event of delay by an arbitrator either by the AAA, [WSI], or individual claimants." *Rios*, 807 F. Supp. 3d at 990. To the contrary, the WSI Terms provide that "Under no circumstances will we be held liable for any delay … due in whole or in part to any … causes beyond our reasonable control." Smit. Decl., Ex. C. at p. 9. As the *Rios* court noted, "[e]ven assuming that most arbitrations proceed efficiently, a single outlier or protracted case can hold up hundreds of other claims indefinitely." 807 F. Supp. 3d at 990. "[N]o consumer expects to wait a decade or longer to adjudicate low-dollar claims." *Id*.

As the Ninth Circuit as held in another similar case, such "batching provision[s] [are] substantively unconscionable because [they] could create lengthy delays… those delays could have a chilling effect on players bringing claims to begin with; and the delays and chilling effects would likely only apply to claims brought by [consumers], not [defendant]." *Pandolfi v. Aviagames, Inc.*,

---

[6] *See, e.g.*, *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 614 (7th Cir. 2024) ("35,651 Illinois consumers… filed arbitration demands" against Samsung); *Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*, 167 N.Y.S.3d 66, 67 (2022) ("31,500 similarly situated arbitration" filed against Uber).

2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025). "Thus, the mass arbitration provision itself creates the risk of de facto waiver of valid claims, weighing heavily in favor of finding substantive unconscionability." *Rios*, 807 F. Supp. 3d at 990.

Worse still, because WSI's terms state such a mass arbitration only applies when "claims are asserted … by the same or coordinated counsel," Smit Decl., Ex. C at 8, the terms are designed to "interfere with claimants' right to counsel of their choosing." *Rios*, 807 F. Supp. 3d at 991. "By automatically imposing the bellwether procedure anytime 25 or more claimants are represented by the same or coordinated counsel, the mass arbitration provision may induce claimants to avoid the bellwether provision altogether by finding different counsel." *Id*. (citing *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *11 (N.D. Cal. Sept. 4, 2024), *aff'd,* 2025 WL 2463742). This is particularly troubling as the consumer plaintiff-side bar is relatively small, and "many plaintiff-side firms may specialize in bringing claims like the [drip-pricing] violations alleged here. Forcing claimants to avoid experienced counsel in favor of less qualified or experienced representation— simply to sidestep mass arbitration delays—imposes an unjustifiable cost manufactured by [WSI] for its sole benefit." *Rios*, 807 F. Supp. 3d at 991. Finally, the "small claims carveout is an illusory alternative that does not cure the arbitration agreement's substantively unconscionable provisions." *Id*.

Nor can these provisions be severed. To the contrary, WSI's terms state that "if … any part of the Mass Arbitration Process Requirements section is found to be invalid… the Arbitration Agreement… shall be severed in its entirety." Smit Decl., Ex. C at p. 9. This unmistakably shows that arbitration clause does not exist to actually arbitrate claims, but to delay claims indefinitely.

**3.    The Lack Of Notice To WSI's Terms And Any Unilateral Modifications To Them Is Procedurally Unconscionable Under *Heckman*.**

**<u>WSI's Arbitration Clause Is Hidden In A 19-Page Document On A Separate Webpage</u>**

"The procedural element concerns 'the circumstances of contract negotiation and formation,' particularly 'oppression or surprise due to unequal bargaining power.'" *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th at 103. In *Cook*, there was only "a low degree of procedural unconscionability," as the only factor present was a contract of adhesion. 102 Cal. App. 5th at 321.

There was no "surprise" that the plaintiff would be bound by arbitration, as plaintiff had "electronically signed [a] standalone arbitration agreement." *Id*. at 317.

That is not the case here. Plaintiffs did not electronically sign anything. They did not even click an "I agree," box or button, which is commonly known as "clickwrap." *See, e.g., Houtchens v. Google LLC*, 649 F.Supp.3d 933, 941 (N.D. Cal. 2023) (clickwrap shown below).



"Instead, the consumer is purportedly bound by clicking *some other button.*" *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 955 (2025) (emphasis in original) (citation omitted). Here, WSI claims Plaintiffs agreed to arbitrate by clicking buttons like "Place Order" and "Submit."

Smit Decl., Exs. A and D (ECF Nos. 22-1 and 22-4)

Courts "doubt[] whether most consumers know that clicking that 'some other button' constitutes agreeing to contract terms." *Berman v. Freedom Financial, LLC*, 30 F.4th 849, 866 (9th Cir. 2022) (Baker, J., concurring) (citation omitted). After all, "the text of the button itself g[i]ve[s] no indication that it would bind plaintiffs to a set of terms and conditions." *Berman*, 30 F.4th at 858. "[C]licking 'Place your order' does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016). And "unlike 'accept' or 'agree,' 'the word 'submit' does not, in its ordinary meaning, manifest assent to an agreement or acceptance' of contract terms." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 223 (4th Cir. 2024).

While the law has jerry-rigged a constructive notice test for such situations, *see* § II.B., *infra*, that does not eliminate the element of surprise. "The doctrine of constructive notice has always been regarded as a harsh necessity" and has always been regarded as "at the best but a poor substitute for actual notice." *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1089 (2024). In contrast, "*surprise* [is present] where the allegedly unconscionable provision is hidden." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (emphasis in original). And aside from "scrollwrap," where "the user must scroll through all the terms before the website allows her to click a box to agree," *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025), every

other kind of online adhesive contract, to some degree, has terms that are "hidden in a hyperlink." *Masry v. Lowe's Companies, Inc.*, 2024 WL 3228086, at *7 (N.D. Cal. June 28, 2024). And even if a user happens to click on the link to WSI's terms, the very first reference to arbitration appears on page 7 of the 19-page document discussing various *other* terms. Smit Decl., Ex. C, p. 7. *Higgins v. Superior Ct.*, 140 Cal. App. 4th 1238, 1253 (2006) ("strong showing of procedural unconscionability" where "the arbitration provision appears in one paragraph near the end of a lengthy, single-spaced [24-page] document" and there was "no effort to highlight [its] presence."); *accord Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 69 (2020) (finding procedural unconscionability where "the arbitration agreement … was buried among other forms.").

Worse still, the "circumstances of contract … formation" give rise to even more "surprise." *Fuentes*, 19 Cal. 5th at 103. "With the ubiquity of internet commerce, online providers have sought to impose contractual terms on even the most trivial of transactions. For example, a website provider may seek to impose contractual terms in connection with the sale of a single item, such as a pair of socks, a transaction in which most consumers would not expect to be bound by contractual terms." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464–65 (2021). And "[h]ere, the context of Plaintiffs' transactions involve isolated, one-off, and non-continuous purchases of [various household] items… Plaintiffs would thus not have expected their purchases to come with ongoing terms and thus would not have scrutinized [WSI]'s website for additional terms." *R.C. v. Walmart Inc.*, 2025 WL 2836648, at *3 (C.D. Cal. Sept. 30, 2025).

Indeed, if it were so self-evident to consumers that they would be agreeing to infinite arbitration clauses every time they made a purchase or signed up for an account online, then the Disney wrongful death lawsuit would not have become national *news*. Indeed, the story picked up attention precisely because "consumers may be unknowingly signing away their rights." *See* fn. 4.

## WSI Can Modify Its Terms Any Time It Wants By Simply Posting Them Online.

If the only surprise and oppression here was the sign-in wrap mechanism WSI employed, that would be one thing. But just as in *Heckman*, it is complemented with a series of other terms that "evince an extreme amount of procedural unconscionability far above and beyond a run-of-the-mill contract-of-adhesion case." 120 F.4th at 683. In *Heckman*, the Ninth Circuit invalidated

Ticketmaster's terms even though, the year before, it had upheld the sign-in wrap, albeit with some serious reservations. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("We find it worth emphasizing that while Appellees' Terms meet the reasonably conspicuous standard, this hybrid form of agreement is not without its risks and invites second-guessing.")

Nevertheless, *Heckman* invalidated the terms on unconscionability grounds because they "permit[ed] unilateral modification of the Terms without prior notice. The Terms provide that Ticketmaster retains the power to 'make changes to the Terms at any time' which would 'be effective immediately when we post a revised version of the Terms on the Site.'" 120 F.4th at 682. Again, WSI's terms here share the very same offending provision. *See* Smit Decl., Ex. C at p.1.

## These Terms and Conditions May Change

We reserve the right to update or modify these Terms at any time, upon notice to you in writing to the last address provided, by email, by posting on the Site, or by any other reasonable means in our sole discretion. We also reserve the right, at any time, to modify or update our **Privacy Policy** in the same manner.

Just as in *Heckman*, here, WSI reserved the unilateral right to "modify these Terms at any time," and could satisfy its notice obligation simply "by posting on the Site." This is wholly improper, as "[b]inding consumers who merely browse a website to the terms specified in the website has been 'consistently held ... to be unenforceable, as individuals do not have inquiry notice.'" 120 F.4th at 682.  Worse still, those "changed Terms apply not only prospectively but also retroactively. That is, they apply to 'any dispute, claim or controversy ... irrespective of when that dispute, claim, or controversy arose.'" *Id*. The very same is true here. As noted, WSI's arbitration clause applies *retroactively* to "any existing… Claims  that you have… prior to the date you agreed to these Terms." Smit Decl., Ex. C at p. 7. "Even standing alone, this [retroactive modification] provision is procedurally unconscionable under California law." *Heckman*, 120 F.4th at 683.

### B.    WSI Fails To Establish A Contract Was Formed

"To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Berman*, 30 F.4th at 856. Since the days of dial-up internet, the test has stayed the same: "(1) Reasonably conspicuous notice of the existence of contract terms and (2) unambiguous manifestation of assent to those terms by consumers are

essential if electronic bargaining is to have integrity and credibility." *Specht*, 306 F.3d at 35.

### 1.    WSI's Screens Failed To Provide Reasonably Conspicuous Notice

The reasonable conspicuousness "test has two aspects: the visual design of the webpages and the context of the transaction." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025).

#### WSI's Website Is Subjected To Heightened Scrutiny

In analyzing conspicuousness, WSI highlights that "[a] hefty dose of common sense goes a long way." ECF No. 22 at 15. As *Sellers* noted, "it is questionable whether a consumer buying a single pair of socks… would expect to be bound by contractual terms, and a consumer that does not expect to be bound by contractual terms is less likely to be looking for them." 73 Cal. App. 5th at 476. Here, Plaintiffs purchased a pan, knife sharpener, and soap dispenser. FAC ¶¶ 11 and 14. This "online purchase of merchandise does not necessarily give rise to a consumer expectation of an ongoing relationship governed by *extensive* contractual terms." *Cruz*, 113 Cal. App. 5th at 956 (emphasis added). So "websites inviting one-off transactions will be held to higher standards." *Berman*, 30 F.4th at 867 (Baker, J., concurring) (citing *Sellers*, 73 Cal. App. 5th at 466).

WSI argues "Plaintiffs anticipated a continuing, forward-looking relationship" because they had "loyalty rewards account[s]" and made several purchases over the years. ECF No. 22 at 13. WSI "misapprehend[s] the nature of the inquiry into the transactional context." *Cruz*, 113 Cal. App. 5th at 956. The overarching inquiry is whether "the parties all agree upon the *same thing in the same sense*." *Id*. at 951 (emphasis added). Accordingly, "Courts focus on whether the typical consumer completing the transaction would 'anticipate ... enter[ing] into an ongoing relationship governed by *extensive contractual terms*' such as the Terms of Use at issue here." *Id*. at 956. "Indeed, one would expect the purchase of a … pair of socks to be subject to a return policy as well," *id*., but not necessarily a 19-page terms of use, which is what WSI is seeking to enforce here.

Users participating in a rewards program to earn 2% cash back on WSI purchases might expect there to be terms governing *how those rewards could be used*. But few, if any, would necessarily expect *the 19-page set of onerous terms here*. The Second Circuit, applying California law, held that "in the context of a promotional offer for a coupon… a reasonable consumer could easily conclude that any vague reference to '[t]erms and conditions' (assuming the consumer

noticed the reference at all) simply contained details about where and how the coupon could be used, as opposed to the consumer understanding that she was affirmatively agreeing to anything (much less to arbitration of any disputes)." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 838 (2d Cir. 2021). Even worse, had a user clicked the "Terms and Conditions" links on the WSI Silver Key Rewards registration page, it would have taken her "to the then-applicable terms and conditions *for the Silver Key Rewards program*." Smit Decl., ¶ 13. Where, as here, a "link misdirect[s]" to the wrong page, "[w]e need not decide whether [the] broken link implicates conspicuousness or explicit advisement, or both… under California law, no mutual assent occurred." *Plata v. Lands' End, Inc.*, 2025 WL 2408818, at *1 (9th Cir. Aug. 20, 2025).

### The Terms On WSI's Various Pages Did Not Stand Out

In evaluating the visuals of a website, courts ask whether the "Terms of Use hyperlinks—their placement, color, size and other qualities relative to the [] Web site's overall design—are … []conspicuous," enough. *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 865–66 (2016).

The guiding principle is simple: "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed." *Cruz*, 113 Cal. App. 5th at 952 (quoting *Berman*, 30 F.4th at 856). So the "webpage must take [*affirmative*] steps 'to capture the user's attention and secure [his or] her assent .'" *Id*. (citing *Berman*, 30 F.4th at 857). "[E]ven close proximity of the hyperlink to relevant buttons users must click on" is often "insufficient." *Berman*, 30 F.4th at 858 (underlined terms directly above button not enough); *Cruz*, 113 Cal. App. 5th at 959 (same). "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers… consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id*. (quoting *Weeks*, 100 Cal. App. 5th at 1086).

While "there is no bright-line test for finding that a particular design element is adequate in every circumstance[,]" *Chabolla*, 129 F.4th at 1156–57, that does not mean anything goes. Rather, "reference to past cases can help calibrate judges' instincts and ensure some modicum of consistency." *Godun*, 135 F.4th at 715 (Nelson, J., concurring).

Here, the most relevant past case is *Rushing*. Judge Orrick reviewed the *exact same* 2020

Shopping Cart and Order Confirmation pages at issue here and held they were not reasonably conspicuous. *Compare* Smit Decl., ¶¶ 7-10, Ex. A at 2 (Shopping Cart pages) and Ex. A at 3-5 (Order Confirmation page). *with Rushing*, Case No. 3:16-cv-1421-WHO, ECF No. 357-3 at 7-8, 19-20 and 22-24 (March 05, 2025 Declaration of Shiva Harris, ¶¶ 13-16, Ex. E (Shopping Cart page) and  Ex. F (Order Confirmation page). And while Defendant claims pages were modified in February 25, 2026, Smit Decl., ¶¶ 7-10, the only discernable difference Plaintiffs' counsel can identify between this new version and what was submitted in *Rushing* is that the new version has added more extraneous textual notices on the Shopping Cart page which further obscures the terms. The layout of the Order Confirmation page has remained the same, except that at the bottom of the page, the "Earn Key Rewards" black box has been replaced with a "Join the Key Today" black box and email opt-in section above the Place Order button has been changed to a text opt-in section.

In *Rushing*, Judge Orrick held that the underlined hyperlinked terms on the Checkout page were not conspicuous because they were "in [the] same black font" as most of the other text on the page. 2025 WL 2391394, at *8. Additionally, the "page is cluttered with pictures (items selected or related) and the disclosure language is found in a side panel that has [] visually prominent" action buttons. *Id*. "[T]here is additional disclaimer language, regarding the prices of items in the Shopping Cart, beneath the 'terms and conditions and privacy policy' language that further obscures the conspicuousness of the T&Cs disclaimer." *Id*. As for the Order Confirmation page, the links were still inconspicuous, because,  although "less cluttered than the Shopping Cart page, … the 'terms and conditions' remain uncapitalized and in black." *Id*. "The font size of the disclosure is also smaller than the majority of the text on the page and not bolded." *Id*.

Judge Orrick's reasoning in *Rushing* tracks binding precedent. In *Cruz*, *supra*, the California Court of Appeal recently reviewed a substantially similar Place Order screen on the Coach apparel website. *See* 113 Cal. App. 5th at 962-63. Like the Shopping Cart page here, "the notice text is but one element in the [one] column of a two-column webpage." *Id*. at 957. Although the text was directly above the action button, "the notice text is less than a quarter of the size of the action button." *Id*. at 958. Further, "the notice text is less prominent than many other elements of the checkout pages, including the areas 'relating to entering credit card information, pricing

information, offers about DIY gift wrap kits, and contact information for Kate Spade stylists.'" *Id*. Moreover, in one key respect, the notice in *Cruz* was better than the one here, as "the notice text is capitalized; the phrases 'TERMS OF USE' and 'PRIVACY POLICY' are underscored," *id*. at 957, whereas here, WSI's terms are uncapitalized. *Cruz* also found it significant that another portion of the page "requiring a consumer to check a box" "to ensure a consumer supplies billing information, they have not done the same to alert a consumer to the Terms of Use." *Id*. at 959. Again, the same is true here. The WSI website used *clickwrap* throughout its purchase flow for users to opt in to text messages and to select various delivery options and payment options. *See* Ex. A at 1 and 4. But to try to bind users to arbitration, it used a more oblique *sign-in wrap* mechanism.

In fact, most California courts evaluating underlined terms on various other checkout pages for similar retail websites have likewise held them to be inconspicuous under California law. [7] And this makes sense. "[A] hyperlink 'must be readily apparent,' and '[s]imply underscoring words or phrases ... will *often* be insufficient.'" *Chabolla*, 129 F.4th at 1156 (emphasis added) (collecting cases). The only two unbinding retail cases WSI cites to the contrary—*Slaten v. Dick's Sporting Goods, Inc.*, 2024 WL 1136399, at *4 (C.D. Cal. Feb. 2, 2024) and *Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *4 (C.D. Cal. June 20, 2024)—were both addressed and rejected by *Cruz. Nail* was wrongly decided and *Slaten* was distinguishable because it did not feature a two-column design. *Cruz*, 113 Cal. App. 5th at 957 and 960. The remaining cases WSI cites either do not address conspicuous notice at all, had hyperlinks in contrasting colors (*Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024))*,* or arose in distinguishable contexts.

The Key Rewards registration pages also cannot show reasonably conspicuous notice. As an initial matter, it is unclear what screens Plaintiffs even saw. WSI's declarant notes that the "loyalty registration webpage changed at some point between July 2019 and January 9, 2025" but

---

[7] *See, e.g.*, *Schlueter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948, at *3 (N.D. Cal. July 30, 2025); *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *5 (N.D. Cal. Feb. 1, 2024); *Plata*, 2024 WL 5339858, at *4, *aff'd*, 2025 WL 2408818; *R.C.*, *supra*, 2025 WL 2836648, at *3; *Rodriguez v. Abercrombie & Fitch Trading Co.*, 2026 WL 892830, at *1 (S.D. Cal. Mar. 30, 2026); *Niedziela v. Viator, Inc.*, 2025 WL 2732916, at *1 (C.D. Cal. Sept. 25, 2025). In fact, some courts have held sign-in wraps featuring blue terms set off from the black text were still inconspicuous because they were part of one-off transactions. *Cody v. Jill Acquisition LLC*, 802 F. Supp. 3d 1261 (S.D. Cal. 2025); *Hernandez v. Event Ticket Ctr., Inc.*, 2026 WL 618252, at *4 (E.D. Cal. Mar. 5, 2026).

---

does not appear to know the dates of those changes, and cannot confirm or deny whether any additional changes were made during that period. Smit Decl., ¶ 13. Both Plaintiffs registered during that interim period. Smit Decl., ¶¶ 15-16. Because "[t]he burden is on the party seeking arbitration to show notice and assent," *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023), WSI's inability to certify which screens Plaintiffs saw is an independent ground to deny its motion.

Yet even if the links worked and Plaintiffs saw the versions of rewards page WSI filed, those pages *still* fail to establish reasonably conspicuous notice. The hyperlinked terms are not set off in a contrasting color, and appear in small font. Smit Decl., Exs. D & E. Both versions show a colorful banner with images at the top of the page, along with numerous promotional buttons above and below the form fields, which clutter the page. *See id.* The more recent version of the page also employs a clickwrap to "keep me signed in," but again, does not use the same clear mechanism for users to assent to the rewards terms hyperlink. Other California courts evaluating sign-in wraps on similar rewards pages also held that underlined terms were not sufficiently conspicuous.[8]

Worse still, the terms on both versions of the Key Rewards screen appear at the bottom of the long page *below* the submit button. Because the page requires scrolling, *a user can register without having ever seen the terms.* Bogdanovich Decl., Ex. 1 (video confirming same). Courts will not enforce terms where, as here, "plaintiffs could not have learned of the existence of those terms unless, prior to [registering], they had scrolled down … below the [action] button." *Specht*, 306 F.3d at 20. "Courts routinely cite visibility of terms—without the need to scroll—as an important factor for determining whether those terms are sufficiently conspicuous… for good reason: Contract terms shouldn't bind consumers who had no reason to know those contract terms existed." *Bretto v. AMC Ent. Holdings, Inc.*, 748 F. Supp. 3d 1036, 1047 (D. Kan. 2024) (collecting cases). A user "may well have known that there was 'unexplored' territory below the screens on which she was operating. But without more, she was not on inquiry notice that this territory included a contract offer and she was not obliged to go exploring for one." *Marshall*, 112 F.4th at 219–20 (citing *Specht*, 306 F.3d at 32).

---

[8] *Berman*, 30 F.4th at 853 ("website[] [that] offer[ed] rewards like gift cards," failed to provide reasonably conspicuous notice of underlined terms where the terms were in small grey font above the relevant action button); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *2 and *4 (C.D. Cal. Jan. 23, 2025) (terms on "Chipotle Rewards Program" enrollment screen were not conspicuous because they were not in a contrasting color).

Dated:  April 29, 2026              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___/s/ *Stefan Bogdanovich*_____

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com


*Attorney for Plaintiffs*